**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DAVIDOFF HUTCHER & CITRON LLP**
605 Third Avenue
New York, New York 10158
Telephone: (646) 428-3235
Andreas Koutsoudakis, Esq. (aak@dhclegal.com
Robert L. Rattet rlr@dhclegal.com)
(Admitted in New York)

*Proposed Counsel for the Debtors and Debtors-in Possession*

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| Englewood Hospitality LLC., | Case No. 25-22962 (SLM) |
| Debtors.[1] | Jointly Administered |
| Englewood Hospitality LLC., and Lefkes Delray LLC<br><br>Plaintiffs,<br><br>v.<br><br>Dmitrios Oikonomopoulos, Gentian Saraci, Port Royale Trading Co. Inc., Fish's Wholesale LLC, Collins Fish and Seafood Inc., Kalamata Capital Group, LLC., SQ Advance, Core Funding Source LLC, and Vivian Capital Group LLC,<br><br>Defendants | Adv. Pro. No. 26-01022 |

**MEMORANDUM OF LAW
IN SUPPORT OF DEBTORS' MOTION
PURSUANT TO 11 U.S.C. §§ 362(a) AND 105(a):
(I) TO EXTEND THE AUTOMATIC STAY TO NON-DEBTORS
GEORGIA DUMAS AND ALEXANDER PAPETSAS; AND (II) FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

---

[1]    The Debtors and the last four digits of the Debtors' federal tax identification number are: (i) Englewood Hospitality LLC (5019), and (ii) Lefkes Delray LLC (0470). The Debtors' primary address is 495 Sylvan Avenue, Englewood Cliffs, NJ 07632.

## **TABLE OF CONTENTS**

**PAGES**

TABLE OFAUTHORITIES...................................................................................................4

PRELIMINARY STATEMENT.........................................................................................6

STATEMENT OF FACTS  ...............................................................................................6

PROCEDURE.....................................................................................................................7

SUMMARY OF STAY ENFORCEMENT AND OTHER RELIEF REQUESTED..........7

ARGUMENT......................................................................................................................8

I. Extension of the automatic stay to non-debtors ...........................................8

II. The Court should extend the automatic stay to the Principals…..…….….12

A.  The Principals are essential to the Debtors' reorganizations..........12

B.  The Principals are entitled to indemnification from the
Debtors...............................................................................................13

C.  The Debtors are the real parties in interest, and the stay should be
extended to the Principals…………………………………………..14

D.  The Debtors would suffer from inconsistent
judicial rulings…………………………………………………..…..15

III. Temporary restraining order and preliminary injunction should
be entered precluding Defendants from proceeding against the
Principals in the State Court Actions……....…………………………16

A.  This Court has the authority to enter the TRO and preliminary
injunction without requiring the Debtors to demonstrate the
traditional factors required for injunctive relief…........................17

B.  Debtors have established the traditional factors including
irreparable harm, a probability of success on the merits and that a
balance of the hardships and public interest weigh in favor of the
entry of a TRO and preliminary injunction…..............................19

1.  The Debtors have established a probability of success
on the merits.………………………….…......................20

2.  The Debtors will suffer irreparable harm absent
entry of the TRO and preliminary injunction....................20

3.   Balance of the hardships and public interest weigh in favor
of the entry of a TRO and preliminary injunction..............21

NO ADEQUATE REMEDY AT LAW................................................................................23

NOTICE ...................................................................................................................24

CONCLUSION...........................................................................................................24

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGES**

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ...........................................................9

*Benihana, Inc., v. Benihana of Tokyo, LLC,* 784 F.3d 887, 895 (2d. Cir. 2015) ......................................16

*McCartney v. Integra Nat. Bank North*, 106 F.3d 506 (3rd. Cir. 1997)..........................................9

*In re 229 Main St. Ltd. P'ship ,* 262 F.3d 1, 3 (1st Cir. 2001)...........................................8

*In re Adelphia Comm. Corp*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ...................................................16

*In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985)...........................................9

*In re Calpine Corp.*, 354 B.R. 45 (2006) ...........................................................15

*In re G-I Holdings Inc.,* 420 B.R. 216, 281 (D.N.J. 2009)…………………………………19

*In re Grede Foundries, Inc.,* 651 F.3d 786, 790 (7th Cir. 2011), ...........................................8

*In re Hal Luftig Co.*, No. 22-01176, 2023 Bankr. LEXIS 19,
(Bankr. S.D.N.Y. Jan. 5, 2023)...........................................................11

*In re JohnsManville Corp.*, 26 B.R. 420, 428 (Bankr. S.D.N.Y. 1983)...........................................10

*In re Kaiser Aluminum Corp.,* 315 B.R. 655, 658 (D. Del., 2004) ...........................................11

*In re Loewen Group Inc.,* No. 98–6740, 2001 WL 530544, *1, 2001 U.S. Dist. 6482
(E.D.Pa.2001)…………………………………………………………………………………...11

*In re LTL Management, LLC, 638 B.R. 291, 312* (Bankr. D.N.J. 2022)……………………………..…9

*In re Morris Senior Living, LLC,* 2013 WL 5753834 (N.D. Ill. October 22, 2013) ...................................8

*In re Otero Mills, Inc.* 25 B.R. 1018 (D.N.M. 1982)………………………………………...…17

*In re S.I. Acquisition, Inc.,* 817 F.2d 1142, at 1146 n.3 (5th Cir. 1987)………………………….17

*In re VistaCare Grp., LLC*, NAI-1523939622 -63- 678 F.3d 218 (3d. Cir. 2012)…………...………...17

*In re W.R. Grace & Co.*, No. 01-01139 (JKF), 2004 WL 954772 (Bankr. D. Del. Apr. 29, 2004)………11

*McTernan v. City of York, Pa.*, 577 F.3d 521, 527 (3d. Cir. 2009)……………….…………………19

*National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994)…………………….9

*In re Philadelphia Newspapers, LLC*, 407 B.R. 606 (E.D. Pa. 2009)……………….…………..…11

*Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282 (2003)...........................................................10

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)........................................9

*United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005)…………………………………...19

*Variable–Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945
F.Supp. 603, 608 (S.D.N.Y.1996)...........................................................18

4

**STATUTES**

11 U.S.C. Section 105(a) ....................................................................................................5

11 U.S.C. Section 1107(a) ..................................................................................................7

11 .U.S.C. Section 1108........................................................................................................7

28 U.S.C. Section 1334(b) ...................................................................................................7

28 U.S.C. §§ 157(a) ...............................................................................................................7

Federal Rule of Civil Procedure 65(a)(1) ........................................................................16

Fla. Stat. 607.0851-(8) ... .................................................................................................13

N.J.S.A. 14A:3-5(2)………………………………………………………...…………14

11 U.S.C. Section 362(a) .....................................................................................................5

**PRELIMINARY STATEMENT**

Englewood Hospitality LLC ("Englewood") and Lefkes Delray LLC, ("Lefkes" and, collectively the "Debtors" or "Plaintiffs"), by their proposed attorneys, Davidoff Hutcher & Citron LLP, files this memorandum of law (the "Memorandum") in support of Debtors' Complaint (the "Complaint") against Dmitrios Oikonomopoulos ("Dimitrios"), Gentian Saraci ("Saraci"), Port Royale Trading Co. Inc. ("Port Royale"), Fish's Wholesale LLC ("FW LLC"), Collins Fish and Seafood Inc. ("Collins"), Kalamata Capital Group, LLC. ("Kalamata"), SQ Advance ("SQ Advance"), Core Funding Source LLC ("Core Funding"), and Vivian Capital ("Vivian Capital" and, collectively, the "Defendants"), pursuant to sections 105(a) and 362 of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for: (i) declaratory judgment that the automatic stay pursuant to section 362 of the Bankruptcy Code be and is extended to Georgia Dumas ("Ms. Dumas") and Alexander Papetsas ("Mr. Papetsas" and, collectively, the "Principals"); (ii) a temporary restraining order, preliminary injunction, and permanent injunction precluding the Defendants from proceeding against the Principals in (a) any collection efforts related to guarantees allegedly executed by the Principals, and (b) judicial actions that are currently pending or where a judgment has been entered (collectively, the "State Court Actions").[2] 362(a) and 105(a). The Debtors respectfully state as follows;

**STATEMENT OF FACTS**

The facts of this adversary proceeding are set forth in the Complaint filed on January 27, 2026, and will not be repeated here but will be referred to below as appropriate. A true and correct

---

[2] See *Collins Fish and Seafood Inc., v Lefkes Delray LLC d/b/a Lefkes Estiatorio and Alexander Papetsas* Case No. 50-2025-CC-018659-XXXA-MB (the "Collins Action"); D*imitrios Oikonomopoulos v. Englewood Hospitality LLC, Georgia Dumas* (BER-L-3826-24) (the "Dmitrios Action"); *Gentian Saraci v. Englewood Hospitality dba Lefkes Estiatorio and Georgia Dumas*, Case No. 2-24-CV-10489 (the "Saraci Action"); Port Royale Trading Co. Inc. vs Lefkes Delray & Alexander Papetsas. Case No. 2025-040404-CC-26 (the "Port Royale Action"); *Fish's Wholesale LLC vs Lefkes Delray & Alexander Papetsas*, Case No. 50-2025-CA-00142-XXXA-MB (the "FW LLC Action").

copy of the Complaint is attached hereto as Exhibit "A".

## PROCEDURE

On December 8, 2025 (the "Petition Date"), the Debtors each filed voluntary petitions (the "Chapter 11 Cases") for relief under the Bankruptcy Code in this Court and elected to proceed under Subchapter V of the Bankruptcy Code in small business reorganization cases. The Debtors are authorized to continue to operate and manage its businesses and properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. This adversary proceeding arises under sections 105(a) and 362(a) of the Bankruptcy Code. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157. This Court has subject matter jurisdiction over this proceeding because it is "related to" the Debtors' Chapter 11 Cases within the meaning of 28 U.S.C. §§ 157(a) and 1334(b).

## SUMMARY OF STAY
## ENFORCEMENT AND OTHER RELIEF REQUESTED

Defendants are currently attempting to aggressively enforce MCA Agreements with purported personal guarantees by the Principals and continue to litigate and obtain judgments in their State Court Actions for alleged damages owed by the Debtors via joint and severally suing the Principals, therefore effectively attempting to sidestep the automatic stay.

The impact of this relief will be to make it impossible for the Principals to be fully involved in the Debtors' operations or reorganization efforts, including the running of business operations and/or conducting restaurant services, and it may further have a preclusive or prejudicial effect on the Debtors' objections to the Defendants' claims in these Chapter 11 Cases.

The Debtors are not asking this Court to adjudicate the controversies between the Principals and Defendants. It is merely asking that the Court give the Debtors an opportunity

to reorganize, which reorganization will be critically impacted if not made impossible by the

Defendants' enforcement of their MCA Agreements and their continued prosecution of the

State Court Actions against the Principals.

## ARGUMENT

### I.    Extension of the automatic stay to non-debtors

Pursuant to section 362(a)(3) of the Bankruptcy Code, the filing of the Debtors'

Chapter 11 Cases on the Petition Date operates as a stay of, *inter alia:*

> the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other
> action or proceeding against the debtor that was or could
> have been commenced before the commencement of the case
> under this title, or to recover a claim against the debtor that
> arose before the commencement of the case under this title
>
> \* \* \*
>
> **any act to obtain possession of property of the estate or of
> property from the estate or to exercise control over
> property of the estate.**

*Id.*

The automatic stay provision of the Bankruptcy Code has a broad purpose, and

"functions as 'one of the fundamental protections afforded to debtors by the bankruptcy laws.'"

*In re Grede Foundries, Inc.,* 651 F.3d 786, 790 (7th Cir. 2011), quoting *In re 229 Main St.*

*Ltd. P'ship ,* 262 F.3d 1, 3 (1st Cir. 2001) The stay applies to all entities "and to ' almost any

type of formal or informal action taken against the debtor or the property of the estate.'" *In re*

*Morris Senior Living, LLC,* 2013 WL 5753834 (N.D. Ill. October 22, 2013) at p. *7, quoting,

*Collier on Bankruptcy* §362.03 (16th ed. 2013). Exceptions to the stay thus are narrowly

construed to give the stay "its intended broad application." See *In re Grede Foundries, Inc.,*

*supra,* 651 F.3d at 790.

Section 362(a)(3) of the Bankruptcy Code extends the scope of the automatic stay from

8

collection activities to prohibition of most injunctive relief. See, e.g., *National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994) ("Section 362(a)(3), however, reaches farther, encompassing every effort to "exercise control over property of the estate"). In *Havlik, Id.,* the court enjoined a plaintiff from seeking a mandatory injunction to compel non-debtor general partners to fund "all expenses of operating and maintaining the Apartment Complex to the extent necessary to maintain Break–Even Level." See *National Tax Credit Partners, L.P.*, at 706.

Although the language of section 362(a) applies to "debtors", courts in this jurisdiction have extended the automatic stay protection to non-debtor third parties in "unusual circumstances." See *McCartney v. Integra Nat. Bank North*, 106 F.3d 506 (3rd. Cir. 1997); See *In re LTL Management, LLC*, 638 B.R. 291, 312 (Bankr. D.N.J. 2022) (discussing unusual circumstances test that warrant extension of automatic stay)*; See A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); See also *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (noting that bankruptcy courts have extended the automatic stay to non-debtors "if it contributes to the debtor's efforts to achieve rehabilitation" and that district courts may similarly "utilize their discretionary power to stay proceeding in the interest of justice and in control of their dockets"); *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) (stating that bankruptcy courts' general equitable powers under section 105 of the Bankruptcy Code are "broader than the automatic stay provisions of section 362").

Courts have found "unusual circumstances" arises when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." See *McCartney v. Integra Nat. Bank North, 106 F.3d*

*506 (3rd. Cir. 1997)* (quoting *A.H. Robins*, 788 F.2d at 999).

At its core, the non-debtor exception seeks to protect debtors from the potential negative impact that would occur from a judgment in the absence of a stay. The Second Circuit, in *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282 (2003) held:

> The automatic stay can apply to non-debtors, but normally does so <u>only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate</u>. Examples are a claim to establish an obligation of which the debtor is a guarantor, *McCartney v. Integra National Bank North,* 106 F.3d 506, 510–11 (3d. Cir.1997), a claim against the debtor's insurer, *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 B.R. 420, 435–36 (Bankr.S.D.N.Y.1983) (on rehearing), <u>and actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant ...,"</u> *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986)(emphasis supplied).

See *Queenie, Ltd. v. Nygard Intern.,* 321 F.3d 282, 287, 288 (2d. Cir. 2003); See also *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986) ("An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case").

Similarly, the District Court for the District of Delaware has held, "[t]he protection of the automatic stay extends to *any action or proceeding against an interest of the debtor.* The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party *with a real interest in the litigation."* See *In re Kaiser Aluminum Corp.,* 315 B.R. 655, 658 (D. Del., 2004) (emphasis supplied)(finding that an action in which the debtor was not named a defendant and which was not, therefore, a lawsuit against the debtor, nevertheless violated both Section 362(a)(1) and (a)(3) of the Bankruptcy Code); See also*, In re Morris Senior Living, LLC,* 2013 WL 5753834 at p. *7 (stating that the "fact

10

that an action does not name the debtor...is not dispositive in determining whether it seeks to 'exercise control' over the debtor's estate property", and affirming a finding that the stay was violated.").

Courts in this jurisdiction have extended the automatic stay to non-debtor officers and principals of debtor corporations where a "third-party action will have an adverse impact on the debtor's ability to accomplish reorganization third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." See *In re Philadelphia Newspapers, LLC*, 407 B.R. 606 (E.D. Pa. 2009) (the court held that "unusual circumstances" were present because the debtors owed potential contractual and common law duties to indemnify the non-debtors, and the state law actions against the non-debtors would impact the debtors' ability to effectively reorganize.); , citing to *In re Loewen Group Inc.,* No. 98–6740, 2001 WL 530544, *1, 2001 U.S. Dist. 6482, at *3–4 (E.D. Pa. 2001); See also *In re W.R. Grace & Co.*, No. 01-01139 (JKF), 2004 WL 954772, at *2 (Bankr. D. Del. Apr. 29, 2004) (applying the automatic stay to litigation between two non-debtor parties where one of the parties was entitled to contractual indemnity from the debtor on account of such claims.)

In *Hal Luftig Company, Inc.*, a case directly on point, the United States Bankruptcy Court for the Southern District of New York extended the corporate debtor's stay to its sole shareholder, Mr. Luftig, who was jointly and severally liable with the corporate debtor on a judgment. See *In re Hal Luftig Co.*, No. 22-01176, 2023 Bankr. LEXIS 19, at *1 (Bankr. S.D.N.Y. Jan. 5, 2023) The Bankruptcy Court found it significant that Mr. Luftig, as president and sole shareholder, was one of three employees of the debtor, and that the debtor depended on Mr. Luftig's promotional efforts and investments to generate revenue. *Id*. Therefore, if the judgment creditor was permitted to enforce its judgment against Mr. Luftig during the

11

bankruptcy case, Mr. Luftig would have to minimize his efforts for the debtor, threatening its ability to repay its creditors and jeopardizing any ability to reorganize. *Id.* In addition to granting a preliminary injunction, the Court granted a further stay for the five (5) year duration of the Debtor's subchapter V plan.

## II. The Court should extend the automatic stay to the Principals

### A. The Principals are essential to the Debtors' reorganizations

As was the case with Mr. Luftig, the Principals are essential to the Debtors' ability to conduct a successful reorganization. As the Debtors' co-managers and part owners, the Principals are key to the Debtors' business operations and survival.

Through their personal efforts, financial backing, and understanding of the restaurant industry, the Principals' remain the foundation for the Debtors' business platforms. In order for the Debtors to survive, the Principals' efforts and attention must be concentrated on the Debtors' food services and continuing operations to further generate revenue to fund a plan of reorganization.

As the Debtors' most critical employees, the Principals' daily duties are a critical factor in the Debtors' restaurant operations. Reducing the Debtors' two most senior employees, and their potential capital contributions, would be highly detrimental to the Debtors.

Thus, without the Principals' full attention, capital and ability to work for the Debtors, these Chapter 11 Cases are certain to fail. The attempted enforcement of the MCA Agreements and the continued prosecution of the State Court Actions against the Principals would therefore have a direct and significantly negative impact upon the Debtors' estates.

Absent the TRO and Preliminary Injunction, it will be extremely difficult for the Principals to focus on the Debtors' potential revenue-generating services, as they will instead

have to defend themselves on a daily basis with aggressive lenders and ongoing and continuous litigation efforts in the State Court Actions. (Complaint, ¶ 3). If the Principals are forced to spend most of their time dealing with the Defendants' pursuing their MCA Agreements and prosecuting their State Court Action– e.g., responding and conducting depositions, spending vital capital on the State Court Actions rather than on the Debtors' businesses– it would be hard to assume that the Debtors would be able to successfully reorganize and survive these Chapter 11 Cases.

**B.     The Principals are entitled to indemnification from the Debtors**

As the Principals are entitled to indemnification by the Debtors under New Jersey State and Florida State law, further continuance of the State Court Action and possible enforcement of judgments would pose significant consequences for the Debtors' estates.

Section 607.0851 of Florida's Business Corporation Act provides:

> 1.     [that] a corporation may indemnify an individual who is a party to a proceeding  because the individual is or was a director or officer against liability incurred in the proceeding if:
>
> (a)   The director or officer acted in good faith;
> (b)   The director or officer acted in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the corporation; and
> (c)   In the case of any criminal proceeding, the director or officer had no reasonable cause to believe his or her conduct was unlawful.
> (d)   The conduct of a director or officer with respect to an employee benefit plan for a purpose the director or officer reasonably believed to be in the best interests of the participants in, and the beneficiaries of, the plan is conduct that satisfies the requirement of paragraph (1)(b).
> (e)   The termination of a proceeding by judgment, order, settlement, or conviction, or upon a plea of nolo contendere or its equivalent, does not, of itself, create a presumption that the director or officer did not meet the relevant standard of conduct described in this section.

See *Fla. Stat. 607.0851 (a)*

Section 607.0858 of Florida's Business Corporation Act provides:

1 The indemnification provided pursuant to ss. 607.0851 and 607.0852 and the advancement of expenses provided pursuant to s. 607.0853 are not exclusive, and a corporation may, by a provision in its articles of incorporation, bylaws, or any agreement, or by vote of shareholders or disinterested directors, or otherwise, obligate itself in advance of the act or omission giving rise to a proceeding to provide any other or further indemnification or advancement of expenses to any of its directors or officers. Any such obligatory provision shall be deemed to satisfy the requirements for authorization referred to in ss. 607.0853(3) and 607.0855(3). Any such provision that obligates the corporation to provide indemnification to the fullest extent permitted by law shall be deemed to obligate the corporation to advance funds to pay for or reimburse expenses in accordance with s. 607.0853 to the fullest extent permitted by law, unless the provision specifically provides otherwise…..

(6) Sections 607.0850-607.0859 do not limit a corporation's power to indemnify, advance expenses to, or provide or maintain insurance on behalf of or for the benefit of an individual who is or was an employee or agent.

Additionally, N.J.S.A. 14A:3-5(2) sets forth:

(2) Any corporation organized for any purpose under any general or special law of this State shall have the power to indemnify a corporate agent against his expenses and liabilities in connection with any proceeding involving the corporate agent by reason of his being or having been such a corporate agent, other than a proceeding by or in the right of the corporation, if

(a) such corporate agent acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation; and…

See *N.J.S.A. 14A:3-5(2)*

As set forth in the Complaint, the Principals are entitled under New Jersey State Florida State laws to indemnification for all damages, including reasonable attorney fees, resulting from costs associated with the enforcement of the MCA Agreements and prosecution and potential judgment associated with the State Court Actions. (Complaint ¶ 60).

**C. The Debtors are the real parties in interest, and the stay should therefore be extended to the Principals**

Simply put, the Principals would not be involved in the MCA Agreements and the State Court Actions if not for their connection with the Debtors, as the alleged personal

14

guarantees by the Principals cited to in the MCA Agreements and in the State Court Actions are solely based on business debts incurred by the Debtors. The Principals' ownership and positions within the Debtors are the sole reason that the Defendants can allegedly point to for suing the Principals joint and severally with the Debtors.

Therefore, the Principals' connections with the Debtors are undeniable. As the part-owners, co-managers, and the primary driving forces as to why the Debtors still exist, it is impossible to separate the identity between them and the Debtors.

Thus, any further actions related to the MCA Agreements and proceedings or potential judgments in the State Court Actions would really be against the Debtors, and not the Principals in their individual capacity.

As such, permitting the Defendants' conduct related to their MCA Agreements and allowing the State Court Actions to proceed against the Principals would violate the automatic stay and should be enjoined. Any prospective ruling on the State Court Actions, or any effect thereof related to the MCA Agreements, should be stayed and Defendants should be prohibited from taking any further action against the Principals.

**D.      The Debtors would suffer from inconsistent judicial rulings**

As the Debtors and the Principals share in essence the same identity, having two simultaneous jurisdictions ruling on the same parties would likely create inconsistent and damaging judicial results.

As set forth in the State Court Actions complaints, the Debtors and the Principals are acclaimed to be joint and severally liable for actions that stemmed in the course of the Debtors' operations. Thus, all claims' Defendants have brought forth in the State Court Actions are based upon the Debtors' restaurant operations and therefore implicate the Debtors

at every turn.

Therefore, as these Chapter 11 Cases and the State Court Actions are based upon the same parties and their corporate conduct, the same issues could end up being put before various different judges, and result in inconsistent verdicts. The Debtors could therefore be prejudiced with findings or rulings in the State Court Actions that severely limit their ability to reorganize in these Chapter 11 Cases.

**III.    A temporary restraining order and preliminary injunction should be entered precluding Defendants from proceeding against the Principals in the State Court Actions or enforcing Defendants' MCA Agreements.**

This Court also has authority under section 105(a) of the Bankruptcy Code to grant the relief requested herein against Defendants in the State Court Action or their efforts related to their MCA Agreements, without mandating the showing of the traditional factors typically required for injunctions. *See In re Adelphia Comm. Corp*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ("The proof required to extend the stay is not as rigorous as that normally required for injunctions. . . . Because the 'basic purpose of [§105(a)] is to enable the court to do whatever necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case

   **A.    This Court has the authority to enter the TRO and preliminary Injunction without requiring the Debtors to demonstrate the traditional factors required for injunctive relief**

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title*." 11 U.S.C. § 105(a)*. As explained in the legislative history, section 105 of the Bankruptcy Code specifically provides the Court authority to stay actions that are not directly subject to the automatic stay:

> ***The court has ample powers to stay actions not covered by the automatic stay.*** Section 105 grants the power to issue orders

necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity.

*S. Rep. No. 95-989, at 51; H. Rep. No. 95-595*, at 341-42 (emphasis added).

Granting the relief requested herein is justified under section 105(a) of the Bankruptcy Code. Numerous jurisdictions, including the Fifth Circuit, have confirmed that "beyond the automatic stay provisions of section 362(a)(1) and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105. . . . Section 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities." See *In re S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.*, 817 F.2d 1142, at 1146 n.3 (5th Cir. 1987).

Under section 105(a), courts have recognized the broad authority "to enjoin parties other than the bankrupt from commencing or continuing litigation." *Robins*, 788 F.2d at 1002 (quoting *In re Otero Mills, Inc.*, 25 B.R. 1018, 1020 (D.N.M. 1982); see *In re VistaCare Grp., LLC*, NAI-1523939622 -63- 678 F.3d 218, 231 n.11 (3d Cir. 2012) ("Bankruptcy courts have broad powers (in addition to 11 U.S.C. section 362) to protect the property of the estate. For example, under section 105(a), a bankruptcy court may issue injunctive relief.")

In the Third Circuit, it is well settled that section 105(a) of the Bankruptcy Code permits bankruptcy courts to extend the automatic stay to third-party litigation where, among other things, "the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." See *In re W.R. Grace & Co.*, 386 B.R. 17, 30 (Bankr. D. Del. 2008); see *Phila. Newspapers*, 407 B.R. at 616-17; *Robins*, 788 F.2d at 1003 (enjoining litigation against a third party where "failure to enjoin would [a]ffect the

17

bankruptcy estate and would adversely or detrimentally influence and pressure the debtor

through the third party" (citation omitted)) Indeed:

> **In such cases, an injunction allows the debtor to receive the benefits of the automatic stay imposed by section 362 of the Bankruptcy Code, which aims to: protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor**

See *Robins, 788 F.2d at 998;* see also *In re W.R. Grace & Co., 475 B.R. 34, 147 (D. Del. 2012) (quoting Robins)* See also *In re Calpine Corp.*, 354 B.R. 45 (2006), citing: *In re United Health Care Organization*, 210 B.R. at 233 quoting *Variable–Parameter Fixture Development Corp. v. Morpheus Lights*, *Inc.*, 945 F.Supp. 603, 608 (S.D.N.Y.1996).

The relief requested in the Complaint is consistent with the provisions of Bankruptcy Code and will protect and preserve the Debtors assets and the value of the companies for reorganizational purposes.  It is manifestly appropriate for the Court to extend and enforce the automatic stay to claims against the Principals regarding the MCA Agreements and in the State Court Actions, as stated previously, any judgment against the Principals is effectively a judgment against the Debtors. Allowing the actions related to the Defendants' continued assertions of alleged personal guarantee claims against the Principals would thus permit indirectly what is expressly prohibited by the Bankruptcy Code.

Most fundamentally, the relief requested in the Complaint is necessary to ensure that the Debtors receives the full and complete benefit of the much needed "breathing spell" that is intended by the automatic stay under section 362(a) of the Bankruptcy Code. Such a breathing spell will provide the Debtors and their professionals with the necessary time

required to formulate a plan to maximize creditor recoveries through these Chapter 11 Cases.

Based on the foregoing, the Debtors respectfully request that this Court exercise its broad equitable powers to stay all claims of Defendants related to their MCA Agreements and those made in the State Court Actions and enforce the automatic stay with respect to such claims against the Principals.

**B. The Debtors have established the traditional factors including irreparable harm, a probability of success on the merits and that a balance of the hardships and public interest weigh in favor of the entry of a TRO and preliminary injunction**

Although the Court has jurisdiction to enter the TRO and Preliminary Injunction without the Debtor having to establish the "traditional factors", the Debtors are still able to prove so.

Federal Rule of Civil Procedure 65(a)(1), incorporated by FRBP 7065, provides for the issuance of a preliminary injunction, on notice to the adverse party.

 In the Third Circuit, the movant seeking a preliminary injunction must demonstrate:

1) "Whether the movant has a reasonable probability of success on the merits;

2) Whether the movant will be irreparably injured by denial of the relief;

3) Whether granting preliminary relief will result in even greater harm to the nonmoving party; and

4) Whether granting the preliminary relief will be in the public interest."

See *In Re LTL Management, LLC, 640 B.R. 322 (D. N.J. 2022)*; *In re G-I Holdings Inc., 420 B.R. 216, 281 (D.N.J. 2009).* citing to *McTernan v. City of York, Pa.*, 577 F.3d 521, 527 (3d Cir. 2009) (quoting *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005)); see also *ADP, Inc. v. Levin*, No. 21-2187, 2022 WL 1184202, at *1 (3d Cir. Apr. 21, 2022) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017)).

19

**1. The Debtors have established a probability of success on the merits**

As set forth in this Memorandum and in the Complaint, the Debtors have established a likelihood of success on the merits with respect to the issuance of the TRO and Preliminary Injunction.

The Debtors have established that "special" or "unusual circumstances" warranting extension of the stay to the Principals and the entry of the TRO and Preliminary injunction exist, including:

a.    An identity between the Debtor and the Principals such that the Debtors are the true judgement debtors, and that the MCA Agreements and the State Court Actions against the Principals will have significant adverse financial consequences for the Debtors' estates.

b.    Based on New Jersey State and Florida State laws, the Principals are entitled to indemnification from the Debtors for all expenses incurred with the State Court Actions, including attorneys' fees and costs associated with defending themselves, under applicable New Jersey State and Florida State law.

c.    Absent an extension of the automatic stay to the Principals, they will be forced to deal with litigation efforts and a potential judgment, thereby jeopardizing the Debtors' abilities to reorganize and successfully emerge from Chapter 11. The Principals' knowledge, capital and experience in the restaurant industry are the foundation for the Debtors' success, and their attention must be dedicated to further increasing their revenue projections.

d.    Permitting Defendants to pursue their MCA Agreements and State Court Actions against the Principals during these Chapter 11 Cases would increase the difficulties of the reorganization process, hinder the Debtors' ability to propose a plan, and irreparably harm the Debtors business reorganization prospects.

Based upon the foregoing, the Debtors have established a likelihood of success on the merits with respect to the entry of a TRO and preliminary Injunction.

**2. The Debtors will suffer irreparable harm absent entry of the TRO and preliminary injunction**

The MCA Agreements and the State Court Actions request of  significant and

oppressive damages are to be born jointly and severally by the Debtors and the Principals.

If the stay is not extended, and the TRO and Preliminary Injunction are not entered, the Debtors will still be protected under Section 362 of the Bankruptcy Code, yet the Principals will not and as stated above, would be forced on a daily basis to expend time and resources on dealing with Defendants' claims and litigation efforts in the State Court Actions. These disruptions will serve only to distract the Principals and irreparably harm the Debtors' chances of successful reorganizations and emergence from these Chapter 11 Cases. In addition, due to indemnification laws, it will increase the Principals' claims against the Debtors' estates, which clearly is not in the best interests of the Debtors' estates or their creditors. Based upon the foregoing, the Debtors will suffer irreparable harm absent the entry of the TRO and Preliminary Injunction.

### 3. Balance of the hardships and public interest weigh in favor of the entry of a TRO and preliminary injunction

The balance of hardships weighs decidedly in the Debtors' favor of entry of the TRO and Preliminary Injunction. The Principals must be free from personal claims related to the MCA Agreements and litigation from the State Court Actions so that they may focus on the Debtors reorganizations as Subchapter V small business cases. The Debtors success has been based upon the Principals time, effort, ability, capital, and hard work. The Debtors' business opportunities and successful restaurant services are due to the Principals work efforts. Therefore, they are an essential component to the Debtors' successful reorganizations. If the Principals are forced to defend themselves from the aggressive behavior of the Defendants, they would be unable to focus on the Debtors' restaurant operations, thereby harming efforts at reorganization. Thus, without entry of the TRO and Preliminary Injunction, it will be nearly impossible for the Principals to give the Debtors and their businesses the attention they

21

require, because they will be forced to constantly deal with the efforts of the Defendants enforcing their MCA Agreements and in litigating the State Court Actions.

Additionally, granting the Complaint would not be averse to the public interest. Rather, courts have consistently recognized the public interest in a successful reorganization. See, e.g., *United States v. Whiting Pools*, Inc., 462 U.S. 198, 204 (1983); *Sudbury*, 140 B.R. at 465. As one bankruptcy judge held: "[P]romoting a successful reorganization is one of the most important public interests." See *In re Gander Partners LLC*, 432 B.R 781, 789 (Bankr. N.D. Ill. 2010) (quoting *In re Integrated Health Servs., Inc.*, 281 B.R. 231, 239 (Bankr. D. Del. 2002)); see also *Manville*, 26 B.R. at 428 ("[T]he goal of removing all obstacles to plan formulation [is] eminently praiseworthy and [this court] supports every lawful effort to foster this goal while protecting the due process rights of all constituencies.") See *In re Philadelphia Newspapers, LLC*, 407 B.R. 606 (E.D. Pa. 2009) (" The Bankruptcy Court properly identified the two public interests implicated: (1) "the public interest in a successful reorganization, particularly of a local institution of some substance and size," and (2) "the constitutional right under Pennsylvania State law with regard to defamation of defendants." It weighed those interests and concluded that, in light of the relatively short stay on the suits against the Non–Debtors, and the immense importance in a prompt and successful reorganization of the Debtor, the public interest in reorganization prevailed.").

As for non-debtor related litigation involving personal guarantees of employees, courts in other jurisdictions have held that:

> **"The public interest weighs in favor of the stay to avoid litigation between the guarantors…There is a likelihood that Debtor will be able to pay its claim. Proliferating litigation between the guarantors—when the Debtor may be able to pay—works against the public interest."**

See *In re Bailey Ridge Partners, LLC*, Bankr. No. 17-00033 (Bankr. N.D. Iowa , 2017)

Furthermore, for cases in which a judgment has already been rendered, Courts in this jurisdiction have applied the same importance and weight of an injunction as to ongoing cases against non-debtor entities. See *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369 (Bankr. E.D. Pa. 2009). As the court held in *Saxby's Coffee Worldwide, LLC*:

> **"In one sense, the entry of the judgments does not alter the need for the injunction. While the judgments eliminate the time and energy that N. Bayer, Grasso and Meakim would spend in defending the Non–Bankruptcy Cases… arguably, they would spend an equivalent amount of time dealing with the disruptions in their personal life that execution against their personal assets would likely create. Thus, the need for an injunction in order to protect the reorganization process is as great, if not greater, with respect to the Defendants who hold judgments against N. Bayer, Grasso and Meakim."**

See *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369 at 387-388. (Bankr. E.D. Pa. 2009)

Based upon the foregoing, the Debtors' have established: (i) a likelihood of success on the merits with respect to the issuance of the Preliminary Injunction; (ii) that the Debtors will suffer irreparable harm absent the entry of the TRO and Preliminary Injunction; and (iii) the balance of hardships weigh decidedly in the Debtors' favor and the public interest clearly will be served by the requested relief. Accordingly, the Court should enter the TRO and Preliminary Injunction.

## <u>NO ADEQUATE REMEDY AT LAW</u>

Courts have found that "where there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceeding or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief." *See In re Calpine Corp.*, 365 B.R. 401, 410 (S.D.N.Y. 2007)

As such, the Debtors' have no adequate remedy at law, because only an extension of the automatic stay pursuant to section 362 of the Bankruptcy Code and a temporary, preliminary and permanent injunction staying Defendants enforcement of the MCA Agreements and further continuation of the State Court Actions as against the Principals will provide the appropriate relief required under these circumstances.

## NOTICE

The Debtors' will provide notice of this Memorandum to the following parties and/or their respective counsel, as applicable: (i) Defendants; (ii) the Office of the United States Trustee for Region 2; (iii) Joseph Schwartz, Esq., the Subchapter V Trustee; (iv) the Debtors' twenty (20) largest unsecured creditors; (v) Debtor's banks; (vi) the Principals' counsel. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

The automatic stay under section 362 of the Bankruptcy Code must be extended to the Principals during these Chapter 11 Cases because they are essential and indistinguishable from the Debtors, and as part owners and co-managers, have valid indemnification claims against the Debtors' estates. Based upon the Debtors' and the Principals' aligned interests, and the potential adverse economic consequences for the Debtors' estates absent extension of the stay to the Principals, this Court should enter the proposed TRO and Preliminary Injunction.

**WHEREFORE**, for the reasons set forth above, the Debtors respectfully request that this Court:

24

i.       Enter a judgment declaring that the automatic stay is applicable to the Defendants' efforts to enforce the MCA Agreements and to proceed with the State Court Actions against the Principals and extending the automatic stay under section 362 of the Bankruptcy Code to the Principals;

ii.      Enter the TRO and Preliminary Injunction enjoining and staying the Defendants from any and all efforts to enforce the MCA Agreements and proceed with the State Court Actions against the Principals.

iii.     Scheduling a hearing or hearing(s) to consider the entry of the TRO and Preliminary Injunction;

iv.      Fixing the form and manner of notice of the hearing(s); and

v.       Such other and Further relief as this Court deems just and proper.


Dated: New York, New York
       January 29, 2026

Respectfully submitted,

DAVIDOFF HUTCHER & CITRON LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400

By: */s/ Andreas Koutsodakis*
       Andreas Koutsodakis

*Proposed Attorneys for the Debtors and the Debtors-in Possession*

25